1817.
JUNE.

Schwartze
vs
Tyson

SCHWARTZE, et al. vs. TYSON.

APPEAL from *Baltimore* County Court. *Assumpsit* for freight, primage and average. The general issue was pleaded.

A S in April 1809 being the owner of an *American* vessel, entered into a charter party of affreightment with N T, to receive on board of her a cargo of flour in barrels, and proceed from *Baltimore* to *Madeira,* and there deliver the cargo to J P; and if he should so order, proceed, after having changed her papers and flag, to *Liverpool,* and there deliver the cargo to the agent of N T, if permission be given to discharge the cargo there; & if not, then proceed to *Lisbon* or *Cadiz.* J P was authorised to order the vessel to either *Cadiz,* or *Lisbon,* without first going to *Liverpool.* The rates of the freight were stipulated, viz 9s. sterling per barrel on the voyage, ending at *Madeira,* 1 s. 3d. sterling if the vessel proceeded from *Madeira* to *Cadiz* or *Lisbon,* without landing the cargo; 13s. 6d. if landed at *Madeira,* and reshipped, and carried to *Lisbon* or *Cadiz,* or to *Liverpool* or if prohibited being discharged at *Liverpool,* and taken either to *Lisbon* or *Cadiz,* or back to *Madeira.* with 5 p. c. primage, &c. The vessel sailed in April, and arrived at *Madeira* in May. The vessel, by order of J o, with the cargo proceeded from *Madeira* to *Liverpool,* without landing any part of the cargo, or changing the flag or papers, and arrived there after the 10th of June, & delivered the cargo to the agent of N T The proclamation of the President of the U S of the 19th of April 1809, declared that the orders in council will have been withdrawn on the 10th of June then next, after which day the trade of the U S with G B, as suspended by an act of congress may be re newed. On delivery of the flour at *Liverpool,* the agent of N T paid freight at the rate of $2 50 per barrel, which was received by the captain of the vessel without prejudice to the further claim of A S for 50 cents per barrel; so as to make the freight $3 per barrel for the voyage from *Madeira* to *Liverpool,* which the agent refused to pay; and for which A S brought an action of *assumpsit* against N T—Held, that if the voyage from *Madeira* to *Liverpool* was undertaken in consequence of a new contract between J P as agent of N t, and th captain of the vessel, then the action might be supported: but that no evidence of such new contract had been proved, for which reason A S could not recover

At the trial the plaintiffs, (now appellants,) gave in evidence, that on, the 4th of April 1809, they being owners of the ship *James,* an *American* vessel belonging to *Baltimore,* let her to freight to the defendant, (the appellee,) and a certain *William Greetham* and *John Devereaux,* trading under the firm of *Greetham* and *Devereaux,* and a certain *Thomas Lee,* by a charter party of freightment under seal, and duly executed. dated the 3d of April 1809, whereby the master of the vessel was to receive on board of her a cargo of flour and cotton, and proceed to the Island of *Madeira,* and on his arrival there deliver the cargo unto *Isaac Philips,* or his order, agreeably to the bill of lading; that the said ship should, if *Philips* should so order and direct, proceed, after having changed her papers and flag, to *Liverpool,* and there make a right and true delivery of the cargo to the agents, factors or consignees, of the freighters, provided that said ship be permitted to discharge the cargo at *Liverpool.* but if she should be prevented, the master with the ship should proceed from *Liverpool* either to *Lisbon, Cadiz,* or back to *Madeira,* as the agents, &c. should order—provided that *Philips* should be at full liberty, on her arrival at *Madeira,* to order the ship either to the port of *Cadiz* or *Lisbon,* without first proceeding to *Liverpool.* In consideration the freighters promised to lade on board the ship a full cargo of flour and cotton, and pay to the owners as and for the freight or hire of the vessel, at and after the rate of nine shillings sterling for each and every barrel of flour so to be laden on board the said ship, if the said voyage ends at *Madeira;* eleven shillings and three pence sterling per barrel, if the vessel proceeds from *Madeira* to *Cadiz* or *Lisbon,* without landing her cargo at *Madeira,* and thirteen shillings and six pence sterling per barrel if she lands her cargo at *Madeira,* reship the same, and proceeds to *Lisbon* or *Cadiz* therewith, or to *Liverpool,* or if prohibited discharging at *Liverpool,* shall proceed either to *Lisbon, Cadiz,* or back to *Madeira,* with 5 p. c. primage, &c. which said several sums shall be deemed and taken in full of freight, primage, port charges, and all other charges whatsoever. save and except the charges of landing said cargo at *Madeira.* and reshipping the same for *England.* They further gave in evidence, that the defendant, immediately after the date of the charter party, and in pursuance thereof, put on board of the

1817.

Schwartze
vs
Tyson

ship *James* at *Baltimore*, 2200 barrels of flour, his property, to be transported to *Madeira*, and some other port or ports, pursuant to the stipulations in the charter party contained; and that the said ship, with these 2200 barrels of flour on board, together with other flour belonging to the other charterers, sailed under the said charter party from *Baltimore* sometime in the month of April aforesaid, on the voyage to *Madeira*, where she arrived sometime in the month of May following, and found there the said *Isaac Philips*, in the charter party mentioned, who was the agent of the defendant, and the other charterers. They further gave in evidence a proclamation of the President of the *United States*, bearing date the 19th day of April 1809, declaring and proclaiming that the orders in council will have been withdrawn on the 10th of June then next, after which day the trade of the *U. S.* with *G. B.* as suspended by the act of congress, &c. may be renewed. They also gave in evidence, that the said ship, on or about the 25th of May 1809, with the said flour of the defendant on board, proceeded from the Island of *Madeira*, by order of *Philips*, and with the consent of the master of the vessel, to *Liverpool*, without either landing any part of the cargo, or changing the flag or papers of the ship, and arrived there a few days after the 10th day of June in the said year, and delivered the defendant's said flour to his agent there, who received it for him and on his account, and paid freight at the rate of two and a half dollars for each barrel, which the captain of the said vessel received without prejudice to the further claim of the plaintiffs for one half of a dollar on each barrel, so as to make up the freight of three dollars per barrel for the voyage from *Madeira* to *Liverpool*, which the said agent refused to pay, and for which this action is brought. They further gave in evidence, that *Philips* sailed from *Baltimore* to *Madeira* sometime before the date of the said charter party, and before it was made, and that before he sailed he was constituted the agent of the defendant, and the other charterers of the ship, for the purpose of receiving, directing and disposing, for them, of such cargoes and property as they might send to *Madeira* in the said ship, or others; and that before he so sailed he, for and by the directions of the defendant, and other charterers, made a contract with the plaintiffs for the said ship, and received particular verbal instructions from said charterers and the defendant to send on said ship to *Liverpool* from *Madeira*, in case the laws of the *United States* should be so altered as to render such a voyage lawful, and in no other case; and that the contract which he made as aforesaid, verbally, for the said ship, was entirely conformable to these orders, which were never in any manner altered by them, or intended to be departed from by him. They also gave in evidence, that at the time of the said voyage from *Madeira* one dollar per barrel on flour was a reasonable freight on such a voyage. It was admitted that the clause in the charter party,

which provides for a change of papers in certain events that might happen in the prosecution of the voyage, was understood to mean a colourable transfer and change of the property to some foreign subject, on whom the laws of the *United States* could not operate. The defendant then prayed the opinion of the court, and their direction to the jury, that upon this proof the plaintiffs were not entitled to recover. And the Court, [*Nicholson*, Ch. J. and *Bland* A. J.] were of opinion, and so directed the jury, that if the voyage from *Madeira* to *Liverpool* was undertaken in consequence of a new contract between the said *Isaac Philips*, as agent of the defendant, and the captain of the said ship, the action might be supported, but that no evidence of such new contract had been offered, for which reason the plaintiffs could not recover. The plaintiffs excepted; and the verdict and judgment being against them, they appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, JOHNSON, and MARTIN, J.

*Harper*, for the Appellants. 1. The direction of the court assumes an erroneous principle of law. It rests wholly on the idea that the voyage provided for by the charter party, and proved by the evidence stated in the bill of exceptions, was illegal and cannot be enforced. But this is a mistake. The voyage was not intended to evade the non intercourse or embargo laws, and was not forbidden by them. The goods were not to be placed in *Madeira* with a view of being introduced into *England* contrary to law, but with a view of being sent to *England* when the law should be repealed or suspended. It was lawful to send them thither with this view. And it was lawful to send them from thence to *England*, as soon as the proclamation, suspending the law, appeared, provided care was taken that they did not arrive before the 10th of June 1809, when the suspension was to take effect. In all this there was nothing illegal. Consequently the court erred in assuming, as the basis of their direction, an erroneous principle of law.

2. Their opinion also contains an erroneous statement of fact. It alleges that there was no evidence of any new contract between *Philips* and the captain, to proceed with the flour from *Madeira* to *Liverpool*, without unlading at the former place. Now it is evident that there was no stipulation in the charter party for such a voyage. There were three voyages from *Madeira* provided for by the charter party, but they all differed from this. It is also evident, from the bill of exceptions, that *Philips* was fully authorised to make this new contract with the captain; and it is positively stated that the captain did go on this new voyage at the request of *Philips*. What is this but a contract? There cannot, it is apprehended, be one more express.

No counsel argued for the Appellee.

JUDGMENT AFFIRMED.